### SMITH v. THE STATE.

In the trial of a criminal case, where the State relied for conviction both upon circumstantial evidence and upon direct evidence consisting of an alleged confession of defendant, and where the court charged, "Whether dependent upon positive or circumstantial evidence, the true question in all criminal cases is, not whether it be possible that the conclusion at which the testimony points may be false, but whether there is sufficient testimony to satisfy the mind and conscience beyond a reasonable doubt," such charge was not rendered erroneous because of the failure of the court to go further and charge the law of circumstantial evidence.

(a) It was not erroneous, under evidence such as that mentioned above, for the court, in the absence of a timely and appropriate request, to omit to charge unqualifiedly upon the law of circumstantial evidence.

(b) Nor was it erroneous for the court, in the absence of such request, to omit to charge the law of circumstantial evidence, to be applied in the event the jury should not believe that the confession had been made.

(c) The confession was sufficiently corroborated, and, there being evidence to support the verdict, we will not disturb the judgment of the trial court in refusing to grant a new trial.

Submitted March 19,—Decided May 14, 1906.

Indictment for arson. Before Judge Holden. Oglethorpe superior court. January 15, 1906.

J. T. Pittard owned a gin-house, which was burned about 4 o'clock on the morning of September 26, 1903, during the ginning season. The seed-house was about 25 feet from the gin-house. Connecting the two was a wooden structure, a little house sufficiently high from the ground to enable wagons to pass under it for loading and unloading, and upon which were two flues for letting the seed out and taking them in from the wagons. This structure is referred to

as the "seed-bin." It contained lint-cotton and other highly in-
flammable material. At the close of the previous day's work there
was no fire about the premises, except in the furnace in the boiler-
room, which stood on the opposite side of the gin-house, 90 feet
away from the seed-bin and seed-house. At the close of the day's
work, there was near this seed-bin a high trestle-bench, such as
plasterers use. Neely Jackson, a colored woman, lived about 100
yards from the gin. There were a number of other residences near
by, among them that of Matthews, where Waggoner, the gin overseer,
boarded, 150 yards away, and Arthur McWilliams, whose house was
about 100 yards away and near that of Neely Jackson. Andrew
Harris was an employee who was permitted to sleep on the porch of
Mr. Pittard and in the gin-house, and was expected to act as watch-
man around the gin-house. He testified, that about 12 o'clock on
the night of the fire, while on watch, he heard a noise emanating
from the direction of the seed-bin, which sounded "like a rat gnaw-
ing or somebody whittling." About this time a dog passed where
he was standing at the front of the gin-house, and he jumped at the
dog, making a noise. Then Bryant Smith, the defendant, came
from the place where the whittling sound was heard, and was hailed
by him several times before he answered, but finally said, "It is no-
body to hurt you." Harris followed the defendant as far as the
well, and saw him go into the house of Neely Jackson. After he
was gone, Harris went to where he had heard the whittling noise,
and there found a slab of fat wood about five feet long, which had
not been there in the evening, standing against the wall of the
seed-bin, and shavings on the ground. The trestle bench was under
the wall of the seed-bin. Neither the shavings nor the bench were
there at the close of the previous day's work. Arthur McWilliams
testified, that, about 3 o'clock of the same night, he heard the defend-
ant in Neely Jackson's house, when she called him to get up, and that
the defendant then asked her where were the matches. This was
earlier than the defendant usually got up. Witness dropped off to
sleep, and was awakened by the alarm of fire, and immediately
sprang out of bed and ran, dressing as he went, to the scene of the
fire, accompanied by Jones Thomas and others, and tried to put it
out. Witness further testified: "I know what Bryant Smith told me
next day. Me and Andrew were talking about how much cotton we

could gin, and he asked how much could we gin now. I told him none, because the gin-house was burnt; he said he got $25 for burning it down, 'a heap seen, but few knew.'" This witness had been previously charged with the offense. Mr. Pittard testified, that he reached the fire just as it was reaching the gin-house, and that it had made considerable headway in the seed-bin where it originated. Mr. Waggoner testified, that he was about to have breakfast, and went out on the porch and saw "when they struck a match;" that he "saw the light," and thought it was some of the men getting ready to work. As he sat down to the table the clock struck four, and he had not "eaten a half biscuit, you may say, until they hollered fire." He ran to the gin-house and found Arthur McWilliams and Jones Thomas trying to put out the fire."

There was considerable conflicting testimony tending to show the defendant's innocence, and especially that he was not at the house of Neely Jackson on the night of the fire, but spent the night at another place, about a half mile distant, and was there when the fire alarm was given. The jury having found the defendant guilty, he moved for a new trial, upon the general grounds, and further: (4) Because the court erred in charging the jury as quoted to the headnote. (5) Because the court erred in failing to charge the law of circumstantial evidence. (6) Because the court erred in failing to charge the law of circumstantial evidence in a qualified way, by instructing the jury that if for any reason they should not believe the direct evidence, before they could convict the defendant upon circumstantial evidence such evidence would have to be so strong as to exclude every reasonable hypothesis except that of the defendant's guilt. The court overruled the motion, and the defendant excepted.

*Samuel L. Olive* and *Paul Brown,* for plaintiff in error.

*David W. Meadow, solicitor-general,* contra.

ATKINSON, J. It will be seen from the statement of facts that there was considerable evidence strongly corroborative of the alleged confession of the defendant. The language attributed to the defendant on that occasion will bear no reasonable construction other than a direct confession that he was paid $25 to burn the house, and in fact did the burning. See, in this connection, *Eberhart* v. *State,* 47 *Ga.* 609; *Owens* v. *State,* 120 *Ga.* 299. The jury was authorized from the evidence to believe that such a confession

had been made. The confession being direct evidence, the conviction did not depend exclusively upon circumstantial evidence; and therefore, in the absence of an appropriate request, it was not erroneous for the court to omit to charge the law of circumstantial evidence. See *McElroy* v. *State*, ante, 37. It does not alter the case that the court gave in charge section 987 of the Penal Code, as quoted in the headnote. Nor was it erroneous for the court, in the absence of such request, to omit to charge the law of circumstantial evidence, to be applied in the event the jury should not believe that a confession had been made. The confession was sufficiently corroborated to justify the conviction of the accused. See *Williams* v. *State,* 69 *Ga.* 14 (26, 27). There being evidence to support the verdict, we will not disturb the judgment of the court in refusing a new trial.

*Judgment affirmed. All the Justices concur.*