## WEAVER et al. v. THE STATE.

1. A conspiracy may be shown by circumstantial as well as by direct evidence.
2. The defendants were charged with murder. On the trial there was positive evidence that the deceased was slain under such circumstances as to make the homicide murder. The evidence relied upon to connect the defendants on trial with the perpetration of the crime was entirely circumstantial, and it was error, requiring the grant of a new trial, for the judge to omit to charge upon the law of circumstantial evidence, though not requested so to charge.

NOVEMBER 15, 1910.

Indictment for murder. Before Judge Roan. DeKalb superior court. July 23, 1910.

*L. B. Norton, D. P. Phillips,* and *L. J. Steele,* for plaintiffs in error. *H. A. Hall, attorney-general, W. S. Howard, solicitor-general, Rosser & Brandon,* and *Mark Bolding,* contra.

ATKINSON, J. On the evening of April 23d, 1910, shortly after 8 o'clock, W. H. Bryson, the conductor of an electric street-car, and S. T. Brown, the motorman of the same car, were assaulted with an intent to rob, and each of them was shot with pistols, the latter dying instantly from his wound. The crime was committed in the county of DeKalb at the end of the car line leading from the business section of the City of Atlanta to Druid Hills. A special term of the court was called; and Charles Walker, Ed Weaver, Jim Black, and Charles Julian were jointly indicted for the murder of Brown. The three last-named defendants were tried and convicted, and each sentenced to be hanged. They moved for a new trial, and excepted to the judgment refusing to grant it.

1. Complaint was made of certain portions of the charge in which the jury were instructed to the effect that if the defendants were parties to an agreement to rob the conductor and motorman, each being present, aiding or abetting the others in any way, and one of their number in furtherance of the conspiracy fired a shot at the motorman and killed him, the act of the one so firing the shot would be the act of all, and each would be equally guilty. The criticism upon the charge was that it was not authorized by the evidence. There was no positive or direct evidence of an agreement between any of the defendants to commit robbery or murder, but there was evidence of circumstances sufficient to authorize the judge as to each of the defendants to charge upon the subject of a

conspiracy.  A conspiracy may be shown by circumstantial as well as by direct evidence.  *McLeroy* v. *State,* 125 *Ga.* 240 (54 S. E. 125) ; *Owens* v. *State,* 120 *Ga.* 296 (48 S. E. 21) ; *Dixon* v. *State,* 116 *Ga.* 186 (42 S. E. 357).  As a new trial will be granted on other grounds, and the case may be tried again, we will not enter into a discussion of the evidence for the purpose of showing its sufficiency to authorize the charge upon the subject of a conspiracy.

2.  In his charge the judge omitted to instruct the jury upon the law of circumstantial evidence, as embodied in the Penal Code, § 984 ; and complaint is made of the failure so to charge, although there was no written request to do so.  While the robbery was in progress Bryson, the conductor, was shot and wounded, but not killed.  The defendants were not on trial for that offense, but were on trial for the murder of the motorman, S. T. Brown.  Bryson testified as a witness for the State ; and according to his testimony, when the car arrived at the end of the line at about 8:30 o'clock, he saw three negroes waiting.  He got out of the car to turn the trolley, preparatory to returning to the city, and they approached as if to get on, and just as he (the conductor) reached the rear of the car and went to adjust the trolley to the wire, one of them ordered him to throw up his hands and deliver what money he had. That one he identified as Charley Walker, one of the defendants named in the indictment, but not one of those on trial.  As soon as the conductor pulled out his pocket-book, another person, identified by the conductor as Julian, one of the defendants on trial, who also "had a gun" on the conductor, turned around and went toward the front of the car, and when about sufficient time elapsed for him to reach the front of the car the conductor heard the report of a pistol.  In preparing to return to the city, while the conductor was changing and adjusting the trolley from the outside, the motorman walked through the car and had just about sufficient time to reach the front when the shot was fired that killed him.  The conductor did not know that the motorman was at the front end, and did not see him on the ground, before the shot was fired.  He called to the motorman for assistance, but received no reply.  After being robbed by Charles Walker the conductor was ordered by him to run, and did so, but was fired on by Walker and wounded so that he could get only about 150 yards from the scene of the tragedy. He did not see the actual shooting of the motorman.  He was un-

able to identify the third man whom he saw, further than to say that he was a little slender, not near as tall as Walker, but taller than Julian, and that "Black fills the description of him pretty well," and that he thought it was Black, but could not identify him positively. He did not see the third man have any gun, or do anything, but merely noticed him present. After the robbery and murder he heard them run off toward the creek. All of this occurred near the shack of the defendant Charles Walker. A woman who lived with Walker, but who was not his wife, testified that she heard shooting on the night of April 23d, and after the shooting all of the defendants named in the indictment came to her house. When they arrived they were blowing, and had their sleeves rolled up; looked frightened and as if they had been running. They gave her a pocket-book with the request that she burn it up, one of them (Jim Black) saying, "I will give you fifty cents if you will burn it up," and, after it was burned, saying further, "You are as much in it as we are," but witness did not know what he was talking about. At the trial Black entered into a detailed statement purporting to show an alibi, and in doing so stated that during a period practically including the time of the murder he was in company with defendant Julian, whom the conductor identified as a person who had participated in the robbery. There was other evidence to the effect, that, some days after the homicide, Ed Weaver made certain statements to a detective, in one of which it was said that he (Ed Weaver) and Jim Black, Will Johnson, and Emmett Walker (the latter two not being included among those who were named in the indictment) were at the scene of the tragedy, and that they had concealed themselves in the bushes, and Jim Black remarked that he was going to have some money from the first two men who came that way, and having two pistols he gave Will Johnson one, and just as the car was rolling up said: "Now, boys, you know what we have got to do." And they came out into the street and went to the front of the car, and Will Johnson threw the pistol on motorman Brown, and Charley Walker and Jim Black went to the rear end of the car, where Conductor Bryson was, just as he adjusted the trolley onto the wire, and Will Johnson fired a shot just as Motorman Brown was stepping onto the front end of the car, and the motorman staggered across the front platform and fell over in the road. Johnson then went through the motorman's

pockets, and he (Weaver) picked up three dollars off the ground, but did not know where it came from. The other statement attributed to Weaver was one in which Charles Walker also participated, and it was to the effect that the first statement was incorrect, in that it was Charlie Julian (one of the defendants named in the indictment) who was with Ed Weaver at the front end of the car and who shot Motorman Brown, and not Will Johnson; and that the reason he had said it was Will Johnson was because Conductor Bryson had identified Will Johnson as the man, and he did not want to dispute a white man's word. Concerning this second statement this witness also said: "Weaver said that he came from the bushes out on this side, and he followed Charley Julian up to the front end of the car, and Charley Julian walked around on the opposite side of the car, and threw a pistol on Motorman Brown: and he said that Jim Black and Charley Walker walked to the rear of the car, and held up Conductor Bryson. He said that Julian went around on the opposite side of the car from the street; that made it the south side. Weaver said that the money changer was brought out, and he picked it up, and got about three dollars out of it, I believe, and he said Jim Black said to throw it away. I am not sure whether he said he threw it or Jim Black, but one of them threw it out in the woods out south of where the car was standing." There was other evidence tending more or less to connect the defendant on trial with the perpetration of the crime, but its character was so clearly circumstantial as that a repetition of it is not regarded as necessary for determination of the questions raised by the criticism of the charge.

On the trial of a criminal case, where a conviction depends entirely upon circumstantial evidence, it is the duty of the judge, whether so requested or not, to give in charge to the jury the principles of law by which the weight of the circumstances is to be determined, and under what circumstances a conviction on circumstantial evidence is warranted. This rule has been often recognized and applied. *Jones* v. *State,* 105 *Ga.* 649 (31 S. E. 574) ; *Hamilton* v. *State,* 96 *Ga.* 301 (22 S. E. 528) ; *McElroy* v. *State,* 125 *Ga.* 37 (53 S. E. 759) ; *Smith* v. *State,* 125 *Ga.* 296 (54 S. E. 127). In the two latter cases it was held that where there was evidence of a corroborated confession of the accused, the conviction would not depend entirely upon the circumstantial evidence which was

involved in those cases, and in the absence of a request a new trial would not be required on account of the failure of the judge to charge upon the law of circumstantial evidence. Admissions may be of such character as to render it difficult to say whether they amount to confessions or to mere incriminating statements. The dividing line is not always clear, though the legal distinction is apparent. A confession is a voluntary statement made by a person charged with the commission of a crime, wherein he acknowledges himself to be guilty of the offense charged. *Owens* v. *State,* 120 *Ga.* 296 (48 S. E. 21). When a person admits only certain facts from which the jury may or may not infer guilt, there is no confession. *Covington* v. *State,* 79 *Ga.* 687 (7 S. E. 153). The distinction is further drawn in *Fletcher* v. *State,* 90 *Ga.* 468 (17 S. E. 100), where Bleckley, C. J., said: "There is a very wide distinction between admitting the main fact and admitting some minor or subordinate fact or series of facts which could be true whether the main fact existed or not." In *Jones* v. *State,* 130 *Ga.* 274 (60 S. E. 840), the statement of a defendant charged with murder was held to be a confession, it appearing that in the statement there was an admission of the killing, accompanied with a statement of the reasons moving the accused to commit the homicide, and that the reasons given were not sufficient to furnish any legal excuse or justification. Under these rules neither the alleged admissions attributed to the defendant Black, concerning the burning of the pocket-book, nor of his association with Julian during a period which embraced the time of the murder, nor those of the defendant Weaver, touching his presence at the scene of the homicide, amounted to a confession. There was no positive evidence of an agreement between any of the defendants to commit the robbery or murder. There was no evidence of any sort that Weaver or Black actually committed the murder. If the evidence implicated either of them, it was only the circumstantial evidence that did so. The same may be said of Julian, the only other defendant on trial. The testimony of the conductor seems to point to him as the person who fired the fatal shot; yet the conductor did not see him or the motorman at the time of the shooting, and his testimony leaves it entirely to inference as to whether Julian was the one who actually fired the fatal shot. This is true whether or not there was any variance between the testimony of the conductor and the allegations

of the indictment touching the character of the weapon with which the motorman was slain. In the indictment the weapon was alleged to be a pistol, while the conductor refers to the weapon which Julian had as a "gun." If the deceased was slain with a pistol, as contradistinguished from a gun, and Julian was seen by the conductor with a weapon of the latter character, the circumstance of his presence with such weapon would be of less weight on the question of identifying him as the actual perpetrator of the murder than if he had been seen with a pistol. No confession or incriminating statement was attributed to Julian, and the evidence to connect him with the actual killing of the motorman or with a conspiracy to rob was entirely circumstantial. The statements of Weaver, made some days after the homicide, and after the termination of the alleged conspiracy, however they might affect himself, were no evidence against Julian. Penal Code, § 1009. It thus appears that as to each of the defendants on trial the evidence relied on to connect them with the perpetration of the crime was entirely circumstantial; and under the facts of the case the omission of the judge to give in charge to the jury the law of circumstantial evidence, as embraced in the Penal Code, § 984, though not requested, was of such character as to require the grant of a new trial in favor of each of the complaining defendants.

*Judgment reversed. All the Justices concur, except Evans, P. J., and Lumpkin, J., dissenting.*

LUMPKIN, J. I am compelled to dissent. The rule is that it is not cause for reversal that the presiding judge did not charge on the subject of circumstantial evidence, without request therefor, if the case did not wholly depend on such evidence. *Cliett* v. *State,* 132 *Ga.* 36. In this case a statement of one of the accused was proved, which, I think, amounted to a confession of a conspiracy to rob, a carrying out of such conspiracy, the participation therein of the accused making the statement, and a murder committed by one of the conspirators in the execution of the conspiracy. There was also direct evidence of a witness of the robbery by violence committed on the employees in charge of a street-car, and an identification of two parties concerned in it (one of the present accused and another person), and a somewhat less certain identification of another defendant. The witness (the conductor) also stated that one of the parties who was armed, after having "had his gun"

on the witness, went toward the front of the car, and that when sufficient time had elapsed for him to reach the front of the car the witness heard the report of a pistol. The mortorman was shot and killed. I think there was direct evidence in the case, and that the omission to charge on the subject of conviction on circumstantial evidence was not a good ground for reversal. I am authorized to state that Presiding Justice Evans agrees with me in this dissent.