## Scroggs *et al.* v. The State.

Fish, C. J. 1. Four persons were jointly indicted and tried for the murder of Joe Cash. From the evidence and the prisoners' statements the following appeared: The defendants were employed as workmen on a certain fruit farm. Scroggs, one of the defendants, resided on the farm. A path led from his house down the hill to the spring. Near the spring was a "cook house." On one side of the path the land was cleared and on the other it was in woods. For some time depredations had been committed on the farm, and late in an afternoon during the month of January, Worley and his son Will were discovered at the "cook house" carrying off certain barrels, both having guns. Worley was arrested and carried to the office of the manager of the farm, but Will succeeded in getting away. The defendants were instructed by the superintendent to go down there and protect the property. They gathered at Scroggs's house, and, between eight and nine o'clock at night, one of them by the moonlight discovered a man whom they did not recognize, coming out of the "cook house." The man turned water out of a barrel and put it on his shoulder and started down the branch. The defendants called to him and asked what he was going to do with the barrel. The man threw down the barrel and proceeded up the path toward the defendants with his gun in his hand, and, when thirty-five or forty yards away, exclaimed with an oath that he would kill them if he could. The defendants, thinking they were about to be shot, fired at him, their guns ranging down the path. The man had on a white shirt and was seen to jump across the path and run up the hill into the woods. The defendants went in the direction the man had gone, and, after having gone a short distance into the woods, discovered Joe Cash, who had been mortally wounded by shot from a gun, and who died shortly afterward. Upon examination the bushes and weeds down the

47

path showed the range of shots proceeding from the direction in which the defendants stood when they fired. The place where Joe Cash was found was out of this range, and the bushes and weeds near by him also showed the range of shots proceeding from another direction from that where the defendants stood when they shot. Blood was also discovered on the leaves, and near Cash was an indenture in the ground and leaves, indicating that somebody or something had been lying there for quite a while. Cash did not explain his presence, or why he was shot, or who shot him. It appeared that he was a feeble old man, and during the afternoon of the homicide had left his home to go to his daughter's, who lived about seven miles away, and the path above described was along a nearer route which he could take in making his journey. He was a stranger in the community, and was unknown by the defendants. He had on a sweater and a striped shirt, and did not have a gun. *Held,* that there was direct evidence to the effect that the defendants shot at a man with guns; and that Joe Cash was killed by being shot with a gun; but whether he was slain by the defendants depended wholly upon circumstantial evidence. Accordingly it was erroneous to refuse a timely written request to charge the jury as follows: "This case depends upon circumstantial evidence; and before the jury would be authorized to convict, they must not only be satisfied to a moral and reasonable certainty and beyond a reasonable doubt of the defendants' guilt, but they must go one step further: the evidence must have the effect of excluding every other reasonable hypothesis in the case save that of **the defendants' guilt,** before they would be authorized to convict." *Weaver* v. *State,* 135 *Ga.* 317 (69 S. E. 488); *McElroy* v. *State,* 125 *Ga.* 37 (53 S. E. 759). See *McLeroy* v. *State,* 125 *Ga.* 240 (54 S. E. 125).

2. Other grounds of the motion for new trial, in so far as they are sufficient to present any question for decision, which complain of rulings on the admissibility of evidence, and of the refusal of requests to charge, and of omissions to charge, when considered in the light of the evidence and the entire charge given, show no ground for a reversal.

3. The requests to charge upon the subject of voluntary manslaughter were not perfect in themselves, and the refusal of them is. not ground for the grant of a new trial. The assignments of error upon the omission of the judge to charge upon the subject of voluntary manslaughter are not sufficient to raise the question as to whether or not voluntary manslaughter was involved in the case.

> *Judgment reversed. All the Justices concur.*
> No. 384. FEBRUARY 25, 1918.

Indictment for murder. Before Judge Jones. Habersham superior court. May 4, 1917.

*J. J. & Sam. Kimzey* and *J. C. Edwards & Sons,* for plaintiffs in error. *Clifford Walker, attorney-general, Robert McMillan, solicitor-general,* and *M. C. Bennet,* contra.