*Clifford Walker*, attorney-general, *R. C. Norman*, solicitor-general, and *M. C. Bennet*, contra.

---

## CRAWLEY et al. v. THE STATE.

1. There was no error in the rulings on the admissibility of evidence, as set forth in the first division of the opinion.

2. The evidence mentioned in the corresponding division of the opinion was irrelevant; but it was not of such harmful character as that its admission taken alone would be cause for reversal.

3. The case not being dependent solely upon circumstantial evidence, it was not erroneous, in the absence of a request, to fail to give in charge to the jury the provisions of section 1010 of the Penal Code relating to circumstantial evidence. ATKINSON, J., dissents.

4. The judge did not err in omitting to charge, without request, the theory of the defense as set out in the 11th and 12th grounds of the amended motion for new trial; such theory being founded entirely upon statements of the prisoners made before the jury.

5. In the absence of an appropriate written request, it is not error to omit to charge the law in relation to impeachment of witnesses.

6. Other special grounds of the motion for a new trial which are not specifically dealt with above are without merit, and are not of such character as to require elaboration.

7. The case being for a decision by a full bench of six Justices, who are

evenly divided in opinion on the question as to whether the evidence authorized a conviction of Rosa Crawley, three of them, Fish, C. J., and Hill and Gilbert, JJ., being of the opinion that the evidence was not sufficient, and three of them, Beck, P. J., and Atkinson and George, JJ., being of the contrary opinion, it is considered and adjudged that the judgment of the court below refusing a new trial as to Rosa Crawley stand affirmed by operation of law.

8. All of the Justices are of the opinion that the verdict as to Blain Stewart, and George and Decatur Crawley, was supported by the evidence.

No. 1793. SEPTEMBER 30, 1920. REHEARING DENIED OCTOBER 2, 1920.

Indictment for murder. Before Judge Jones. Union superior court. November 13, 1919.

George Crawley, Decatur Crawley, Rosa Crawley, and Blain Stewart, being on trial under indictment charging them jointly for the murder of Benjamin F. Dixon by shooting him with certain shotguns, were convicted. Rosa Crawley and Blain Stewart were recommended to the mercy of the court. The defendants made a motion for new trial, which was overruled, and they excepted. The shooting which resulted in the homicide occurred at the home of the Crawleys, which was a small house situated in a little cove at the foot of a mountain about six miles from the town of Blairsville. George, Decatur, and Rosa Crawley were brothers and sister, and Blain Stewart was their cousin. The men were within the military draft age as prescribed for the United States army, and were charged as violators of the selective-draft law. Dixon was a deputy United States marshal, and, accompanied by the sheriff of the county, he went to the Crawley home for the purpose of arresting George and Decatur Crawley, and was wounded by shots from a gun or guns. There were two wounds, one of which was fatal, and the other was not fatal. He was removed to a neighboring place, and died from his wounds the third day after they were received. The State introduced evidence tending to show that the shooting occurred in the following manner and under the following circumstances: The officers while seeking the men approached the home of the Crawleys about 12 o'clock in the day. Rosa was on the front porch, and invited them in. The sheriff went to the front room and told Rosa that they were officers, and had warrants for the boys, and wanted to know where they were. Rosa replied that none of the boys were there, except Blain Stewart. The sheriff asked to see him, and Rosa went through a door into a side room and brought out Blain Stewart. The sheriff asked him

his age, and whether he was exempt from military duty; he replied that he was, and had an exemption card, which was in a trunk in another room, and which he asked Rosa and her mother to bring. They failed to find it. Blain then, pretending to go after the card, opened a door and walked through a "side room." The door closed after him, but did not latch, which being noticed by Rosa, she proceeded to latch the door behind him. The sheriff, suspecting that Stewart was trying to get away, signaled Dixon to go around the house, which he did, and about that time a gun fired. The sheriff then undertook to go through the door; but as he caught the latch, Rosa shoved him away. The sheriff drew his pistol and Rosa backed from the door, and the sheriff pulled it open. As the door opened a single-barrel shotgun was presented at him by Stewart. The sheriff grabbed the gun and jerked Stewart with his gun into the front room. At this time George and Decatur Crawley were in the side room. While the sheriff was contending with Stewart for the gun, it went off, discharging a load of small shot into the floor. Then the sheriff discovered a double-barrel shotgun presented through the door by Stewart, and caught it with his hand; as the hammer went down it struck his thumb and did not shoot. He wrested it from Stewart. After the sheriff had taken the gun from Stewart, the latter ran through the side-room door, and Rosa closed the door behind him. The sheriff opened the door, jumped into the room, and met Dixon "falling." He had been shot twice, and said he was dying. The sheriff laid him on the floor and went into the yard after the men, but they were gone. The officers did not have guns, but pistols. No pistols were fired. Dixon stated to the sheriff that "his pistol did not fire. He snapped it, but it did not fire." George and Decatur Crawley each made statements before the jury, in which they admitted shooting at Dixon, but insisted that they shot in self-defense and in defense of habitation, being taken by surprise by the sudden appearance of Dixon at the kitchen door in the act of shooting them with a pistol while they were in the room, George making a fire and Decatur and Blain Stewart eating. They further stated that at the time of the shooting they did not know it was Dixon, or that he was an officer. Rosa Crawley and Blain Stewart did not make any statement before the jury. Other facts will sufficiently appear in the opinion.

*John A. Sibley* and *Hughes Spalding,* for plaintiffs in error.

*Clifford Walker, attorney-general, J. G. Collins, solicitor-general, M. C. Bennet, W. E. & T. S. Candler, Pat Haralson,* and *Howard Thompson,* contra.

ATKINSON, J.   1. The State contended that Benjamin F. Dixon was a deputy United States marshal, and that he, assisted by M. C. Towery, sheriff of the county, was attempting, at the time of the homicide, to execute certain warrants against George and Decatur Crawley, defendants.   One ground of the motion for new trial assigns error upon the admission of testimony to the effect that Dixon held the position of Deputy United States marshal, over the objection that the testimony was a mere conclusion of the witness.   After stating Dixon's official position, the witness further testified: "He acted as deputy marshal, and arrested United States prisoners. "He was doing business for the government. He had been for some time." Another ground of the motion for new trial assigns error upon the admission in evidence of the warrants against George and Decatur Crawley.   The warrants and affidavits were substantially alike in each instance, and it will suffice to state the contents of one.   The caption was: "United States of America, Northern District of Georgia.   Office of United States Commissioner.   At Blairsville, Georgia."   The affidavit proceeded: "Before me, W. C. Carter, a Commissioner duly appointed by the District Court of the United States of America, for the Northern District of Georgia, . . personally came O. W. Barber, Agt. Dept. Justice, who being duly sworn deposeth and saith that on or about the 1st day of Sept., 1918, within the Northern District of Georgia, one George Crawley did then and there carry on the business of a distiller without having given bond as required by law . . Vio. the Selective Draft Law, and contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States.   [Signed] Omar W. Barber, Spt. Agt. Dept. of Justice.   Sworn to and subscribed before me, this 27th day Sept., 1918.   W. E. Candler, U. S. Com. Northern District of Georgia." The warrant issued upon the affidavit contained a similar caption, and proceeded: "The President of the United States of America. To the Marshal of the United States for the Northern District of Georgia, or his Deputies, or either of them.   Whereas, complaint on oath has been made to me, charging that, on or about the 1st

day of Sept., 1918, within the Northern District of Georgia, one George Crawley did then and there . . vio. Selective Draft Law: Now, therefore, you are hereby commanded, in the name of the President of the United States of America, to apprehend the said George Crawley and bring him forthwith before me, or some Judge or Justice of the United States, or other United States Commissioner, that he then and there may be dealt with according to law for said offense. Given under my hand and seal, 27 day of Sept., 1918. W. E. Candler, U. S. Commissioner. (Seal)." The objections urged to the admissibility of the warrants were: (1) that the papers had not been properly identified; (2) that there was "no supporting affidavit;" (3) that the warrants do not set forth any crime against the United States of America or the State of Georgia. The sheriff testified that he and the deputy marshal had the warrants above mentioned, at the time they were attempting to make the arrest. The warrants were not in all respects regular, but they were sufficient authority to the officers for arresting the offenders for violation of the selective-draft law. When considered in connection with the context, there was no error in permitting the witness to testify that Dixon was deputy United States marshal, or in admitting the warrants over the objections stated. In another ground of the motion error is assigned upon the admission of the testimony of the sheriff, to the effect that after the deceased was shot his intestines protruded from the wound. The testimony was admitted over the objection that it was irrelevant and prejudicial; as the witness had previously stated that the wound was mortal. This ground of the motion is without merit.

2. A witness was permitted to testify that he had seen "some red clothes hanging up, looked like handkerchiefs around the yard, three or four." Also, that he had heard Decatur talking a "right smart about it," referring to the local selective-draft board in the county. Also, that when he was in the Crawleys' cornfield, Frank got a notice and was speaking of mailing a paper to the local board. Witness thought that Decatur was present, but was not certain. Felix said: "I would not mail it and I would not go." "Lawrence says, 'Frank, you better go; you are not too old,' and Felix says, 'What in the hell do you know?' and Lawrence says, 'That is my father's old record; it is all I have to go by.'" The witness said, "Boys, we ought to all go" and register. Also, that witness

had heard Decatur talk about his brother having gone to Camp Gordon; "said he was at Camp Gordon, and asked me about my brother, and I asked them about theirs," and "said they had not heard from George in a long time." All of this testimony was objected to in the several grounds of the motion, on the ground that it was irrelevant. The ground of objection was well taken, and the evidence should have been excluded; but it does not appear to be harmful; and a new trial will not be granted on the error alone of admitting this evidence.

3. One ground of the motion for a new trial is as follows: "Because the court erred in failing to charge the law of circumstantial evidence, as contained in section 1010 of the Penal Code, to wit: 'To warrant a conviction on circumstantial evidence the proved facts must not only be consistent with the hypothesis of guilt, but must exclude every other hypothesis save that of the guilt of the accused.' Defendants contend that under the evidence three of the defendants necessarily could not have been convicted except upon the theory that a conspiracy existed between all of the parties, and that the proof of conspiracy necessarily rested upon circumstantial evidence, there being absolutely no direct evidence that any conspiracy did exist; and the court, having charged the law applicable to a conspiracy, should have charged also the law of circumstantial evidence." As to this ground the opinion of the majority is as follows:

The four defendants were tried jointly. The evidence is directly to the effect that the four defendants were at the house at the time of the homicide, and that two of them shot the deceased, one of them inflicting upon the deceased a mortal wound. Another of the defendants was, at the time of the homicide, engaged in a struggle with the sheriff, the companion of the deceased, while the fourth defendant was actively interfering with the sheriff in his attempt to open a door leading into the room where the shooting occurred and to go to the rescue of the deceased. There was no request to give in charge the provision of section 1010 of the Penal Code, quoted above. The case against the defendants is not dependent solely upon circumstantial evidence; and, under the repeated rulings of this court, the failure to give in charge the rule relating to circumstantial evidence was not error. If the jury believed beyond a reasonable doubt that one or more of the

defendants shot and killed the deceased without justification, and if they believed that the other defendants were present aiding and abetting the slayer or slayers in the commission of the homicide, they would have been authorized to convict such defendants. The case against neither of the defendants depended entirely on circumstantial evidence. Even if the State depended upon circumstantial evidence to establish an essential fact, to wit, the conspiracy, in order to connect one or more of the defendants with the commission of the homicide, the mere failure to charge the rule above stated, in the absence of a request so to do, was not error requiring the grant of a new trial.

The opinion of the writer is as follows: The deceased received two gunshot wounds, only one of which was necessarily mortal. The sheriff testified that he saw both George and Decatur Crawley shooting at the deceased at the same time; and each of them admitted in their statements to the jury that he had shot the deceased, neither admitting that he had inflicted the mortal wound. Such evidence would not show which of them inflicted the mortal wound. In order to convict either for the homicide under these circumstances, it would be necessary to prove that they were in conspiracy. *McLeroy* v. *State,* 125 *Ga.* 240 (54 S. E. 125); *Scroggs* v. *State,* 147 *Ga.* 737 (95 S. E. 226); *Fudge* v. *State,* 148 *Ga.* 149 (95 S. E. 980). The same may be said of Rosa Crawley and Blain Stewart, neither of whom shot at the deceased, and therefore could not have been the actual slayer. Both were present and engaged in conduct tending to show that they were aiding and abetting George and Decatur Crawley in such manner as would show a conspiracy. While there was positive evidence of circumstances tending to show a conspiracy, such positive evidence did not identify with certainty any one of the defendants as the actual slayer of the deceased; and in order to hold one or all of them responsible for the crime, it was necessary to show that the homicide was committed by one of the defendants while in pursuance of a conspiracy. There was no positive evidence of an agreement to kill the deceased; and in order to show a conspiracy, it was necessary to rely on the circumstances of concert of action among the defendants, which, as circumstantial evidence, pointed to the existence of a conspiracy. Such being the case, the court, without request, should have charged the law applicable to cases of cir-

cumstantial evidence. *Weaver* v. *State,* 135 *Ga.* 317 (69 S. E. 488) ; *Baynes* v. *State,* 135 *Ga.* 219 (69 S. E. 170) ; *Fudge* v. *State,* and *Scroggs* v. *State,* supra.

4. One theory of the defense was that the deceased made a deadly assault on George and Decatur Crawley by shooting at them with a pistol, when they did not know that he was an officer trying to make an arrest, and when they were not attempting to resist or evade arrest, and deceased was shot in the resistance of such deadly assault. This theory was based entirely on the statements made by two of the defendants before the jury. The judge charged generally upon the law of justifiable homicide, but did not charge with respect to the contention stated above, to the effect that the defendants would not be guilty, if, being assaulted in the manner indicated, they shot without knowing that the deceased was an officer attempting to make an arrest, or that it was the duty of the officer under the circumstances to inform the defendants of his purpose to make the arrest. The eleventh and twelfth grounds of the amended motion for a new trial complain of the omission to so instruct the jury. Conceding, without deciding, that the grounds of the motion for a new trial stated correct principles of law, as they depended entirely upon the statements of the prisoners made before the jury, and there was no written request for a charge as contended, such grounds do not show sufficient cause for reversal.

5-8. The rulings announced in the fifth, sixth, seventh, and eighth headnotes do not require elaboration.

*Judgment affirmed.*