1. The court did not err in failing to charge, in the absence of a special written request, the contention of the defendant that he had and used no weapon at all in his encounter with the deceased, such theory being found only in the statement of the accused. Lampkin v. State, 145 Ga. 40 (6) (88 S.E. 563); Taylor v. State, 155 Ga. 785, 787 (118 S.E. 675); Rozier v. State, 185 Ga. 176, 180 (119 S.E. 309).
2. The conviction of the defendant being dependent entirely upon circumstantial evidence, the court erred in failing to charge, though no special written request was made, the law as to such evidence. Weaver v. State, 135 Ga. 317 (2) (69 S.E. 488); Collier v. State, 154 Ga. 68, 78 (113 S.E. 213); Crumady v. State, 168 Ga. 457, 463 (148 S.E. 157); Powers v. State, 172 Ga. 1 (157 S.E. 195); Blocker v. State, 185 Ga. 322 (2) (195 S.E. 207).
3. The complaint that the court, although no timely written request was made, should have given a particular charge relating specifically to the evidence is without merit, the general charge having fairly and fully submitted the issues under the facts and the indictment; and if a more specific instruction was desired, a timely written request should have been made.
4. Since the case is being remanded for another trial because of the error of the court in failing to charge the law of circumstantial evidence, no ruling is made on the general grounds of the motion for new trial.
Judgment reversed. All the Justices concur,except
Mose Boyd was jointly indicted with Henry Patterson for the offense of murder in cutting and stabbing Bill Johnson with certain pocket knives and inflicting a mortal wound upon him. Henry Patterson was tried, convicted with a recommendation of mercy, and sentenced to life imprisonment. At a succeeding term of court, Mose Boyd was tried, convicted with a recommendation of mercy, and sentenced to life imprisonment. The evidence, briefly stated, showed the following facts: On the night of the homicide, Boyd and Patterson had been riding around in an automobile in Louisville, Georgia, with other companions. After Patterson had left the car and the rest were approaching the house of Louise Givins, where the homicide subsequently occurred, Patterson was seen nearby. On arrival of the party at the house of Louise Givins, Bill Johnson was on the porch. Louise Givins went into her house and was soon followed by Mose Boyd, Bill Johnson, Henry Patterson, and others. Shortly after entering, Bill Johnson slapped Louise Givins. The defendant and Bill Johnson began pulling at this woman, and after she managed to get away from them the two began to struggle and fight. Henry Patterson pulled the deceased loose from the defendant, and then he and the defendant crowded the deceased from the front room through a door into a back room into darkness. Before the three had passed through the door Henry Patterson was seen with a raised knife, and after they had entered the dark back room, witnesses heard noises in that room indicating that the fight was continuing there. Blood on the door and on the wall indicated that the deceased had been severely cut at or near this door leading from the front room to the back room. From testimony of a physician, who later examined the body of the deceased, as to the probability of blood spurting from a fatal wound of the deceased, it was inferable that the blood on the door and on the wall came from a wound of the deceased while he and the other two were at or near the door in their encounter. A trail of blood on the floor indicated that the deceased, after being mortally wounded, went out a back door to a nearby house where, according to testimony, he fell upon the floor of that house and soon thereafter died. Testimony of the examining physician showed that the deceased had been cut and stabbed in five places, one wound being *Page 855 
a stab wound in the breast and another being a large cut in the neck severing the jugular vein. This wound in the neck was, according to the physician, sufficient to produce death. Eddie Hargrove testified that shortly after he left the premises he was overtaken by the defendant and rode with him to his house, less than a mile from the home of Louise Givins, where he left the automobile of the defendant and walked to his own home; and that the defendant did not say a word about what had happened in the back room but just said: "I stobbed at him. I don't know whether I hit him or not." Cassie Patterson, wife of Henry Patterson, testified that the defendant and Eddie Hargrove came by her house, and "Mose Boyd told me he had cut Bill Johnson when he come in the house, and he says, `There goes the law in the quarter now,' and he said, `I am going back up there, and if he starts anything else I'm going to kill him.'" She also testified that Henry Patterson had been convicted and given a life sentence and was serving it in the Reidsville prison. It further appeared that on the night of the homicide the sheriff made an effort to apprehend the defendant, Mose Boyd, but was unable to do so, and never obtained his custody until he was caught in New York City by the F. B. I.
The defendant made a statement, in substance as follows: After the deceased had slapped Louise Givins several times and had asked "Who don't like it?" and no one answered, the deceased approached the defendant and asked if he didn't like it. The defendant said, "This woman ain't nothing to me." The deceased then grabbed the defendant by the collar and reached in his bosom as if to get a pistol. He usually carried a pistol. The defendant tried to get away, the deceased struck him, and they "tied up fighting." Henry Patterson ran in the room and grabbed the deceased loose from the defendant. By that time Eddie Hargrove entered the door. Louise Givins ran out the door. Robert Heath ran out the door, knocking the lamp from the dresser. The defendant then ran out the door, leaving Henry Patterson, the deceased, and Eddie Hargrove in the room. The defendant went to his car, and about a hundred yards away was joined by Eddie Hargrove and Robert Heath. Eddie Hargrove said that he had left the house just behind the defendant, who was not hurt, and that he did not know about Henry Patterson. The defendant later learned from Shine Prosser that the deceased had been killed. The defendant took his wife and children to his *Page 856 
cousin's and was told that, since the defendant had been living there only about six weeks, "they are going to lay it all on you because you have just moved out here." On his way back the defendant saw Sheriff Hubbard, and hid in a cotton field while the Sheriff talked to his wife and children. The deceased's father was heard to say that the defendant killed the deceased and should be hung. As the defendant returned home on foot, he heard Sheriff Hubbard talking to Eddie Hargrove, who told the Sheriff that the defendant did the cutting. This was untrue. Neither he nor the deceased had a knife. Henry Patterson was Eddie's brother-in-law, and Louise Givins was his first cousin. It looked like they were all against the defendant, trying to put the blame on him, and being frightened, the defendant left. He was not guilty.
The exception here is to the judgment overruling the defendant's motion for new trial on the usual general grounds and several special grounds, as follows: Special ground 1 complains that the court erred in failing to state without request the alleged material and substantial contention of the defendant, that he had no weapon which was likely to produce death at the time of the argument and fight between him and the deceased; that the deceased assaulted him, and the defendant defended himself but used no weapon of any kind; and that the court should have charged the jury that, if they believed such to be true, they would not be authorized to find the defendant guilty. Special ground 2 complains that the court erred in failing to charge the jury without request that to warrant a conviction on circumstantial evidence alone, the evidence must not only be strong enough to convince them of the guilt of the defendant to a moral and reasonable certainty and beyond a reasonable doubt, but must be so strong as to exclude every other reasonable hypothesis save the guilt of the accused. Special ground 3 complains that the court erred in failing to charge without request the law applicable where two persons are jointly indicted, and that the court should have charged substantially as follows: "I charge you that, where one jointly indicted with another or others for murder is on trial, if you do not believe beyond a reasonable doubt that the defendant on trial either inflicted the mortal wound himself or was present aiding and abetting the one who did, you would not be authorized to find a verdict of guilty in this case. I charge you that mere presence and participation in the general transaction *Page 857 
in which a homicide is committed is not conclusive evidence of consent and concurrence in the perpetration of a crime by a defendant sought to be held responsible for the homicide as aiding and abetting the actual perpetrator, unless such defendant participated in the felonious design of the person killing;" it being contended that such charge was demanded because the indictment in the hands of the jury showed on its face that Henry Patterson, who was jointly indicted with the defendant, had been convicted, and the testimony of Cassie Patterson, the wife of Henry Patterson, on the trial of the defendant here was that Henry Patterson had been convicted and given a life sentence and was serving it in the Reidsville prison.