---

(No. 16173.—Reversed and remanded.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HERMAN SPRANGER *et al.* Plaintiffs in Error.

*Opinion filed December 16, 1924.*

1. CRIMINAL LAW—*defendant may testify directly as to his motive.* In criminal cases, where the intention, motive or belief of the accused is material to the issue, he is allowed to testify directly to the fact and have such testimony considered in connection with the circumstances surrounding the act, even though such circumstances tend to overcome his declarations.

2. SAME—*defendant's competent evidence is not rendered inadmissible because of preponderance against it.* The weight of the evidence for the prosecution does not affect the competency of evidence for the defense, and competent evidence of the defendant is not to be rejected because of a clear case against him.

3. SAME—*defendant's statement must be shown to have been voluntary.* A statement made or signed by the defendant in the police station after his arrest must be shown to have been voluntarily made before it can be admitted in evidence.

4. SAME—*defendant's statement is not evidence against a co-defendant.* A statement made or signed by a defendant in the

police station after his arrest is not competent evidence against a co-defendant even though the co-defendant signed the statement as a witness, his signature having been obtained while the influence of violent treatment and threats by the police, who had forced him to sign a statement the previous day, was still operative.

5. SAME—*written statement of defendant cannot be taken to jury room.* The jury should not be permitted to take with them for consideration in the jury room, depositions, dying declarations, confessions or written statements of the defendant, or other instruments of evidence depending for their value on the credibility of the maker.

6. SAME—*when instruction defining malice aforethought is erroneous in ignoring defense.* In a murder trial, where self-defense, or the right of one of the defendant's to protect the other, who was his brother, is set up, it is error to instruct the jury that malice aforethought does not necessarily imply the lapse of a considerable time between the formation of the intent and its execution, without referring to the defense set up, as there may have been, under the defense, a deliberate and justifiable intent to take life.

7. SAME—*when an instruction as to circumstantial evidence is erroneous.* An instruction that in considering circumstantial evidence as tending "to prove the guilt or innocence" of the defendant the jury should accept only such facts or circumstances as are proved "beyond a reasonable doubt and to a moral certainty," is erroneous in tending to require the defendant to prove his innocence beyond a reasonable doubt.

8. SAME—*instruction should not characterize defendant's statement as a confession.* Where the defendant has made a statement which is not an acknowledgment of guilt but contains only admissions of some criminating circumstances, it is error to instruct the jury as to when a confession will justify a verdict of guilty.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. WALTER P. STEFFEN, Judge, presiding.

O'BRIEN, PRYSTALSKI & OWEN, for plaintiffs in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and EDWARD C. FITCH, (EDWARD E. WILSON, and CLYDE C. FISHER, of counsel,) for the People.

Mr. JUSTICE DUNN delivered the opinion of the court:

In a street brawl about one o'clock in the morning of Sunday, September 23, 1923, Ernest Lundgren was killed by Herman Spranger. The latter and his brother, Theodore, were indicted for murder, and upon a trial Herman was found guilty of murder and Theodore of manslaughter. They were sentenced to imprisonment, Herman for fifteen years and Theodore until discharged according to law, and they have sued out a writ of error.

Lundgren and the Sprangers were strangers. A few minutes before midnight on Saturday night, Lundgren, who was a deputy clerk in one of the branches of the municipal court, with his friend, Bill Nelson, went into the saloon of Joe Haber, in front of which he was killed a few minutes later, at the northeast corner of North avenue and Wood street, in the city of Chicago. He played a game of pool with some person who was there and who went away after the game. Lundgren went to the bar. About a quarter after twelve the two Sprangers came in with four Lithuanian associates. According to the Sprangers the six had a drink of moonshine at the bar. Harry Gerdack, who is known as "Jeff," came into the saloon and he and Lundgren played pool. When they quit playing it was about closing time. They went to the bar. The testimony as to what took place in the saloon is vague. Gerdack testified that he heard something in a loud tone of voice, and that was Herman. He does not say what he heard other than that. Haber testified that after Lundgren and Gerdack got through playing pool Lundgren stepped up to the bar again and began talking with Gerdack and the pool players. Haber was in another corner, and when he came back Herman was turning around to Lundgren and was talking about "ex-coppers." Herman had been on the police force. He said he was an ex-copper and was not afraid of anybody; he could pinch anybody he wanted to. Haber continued that he saw that Herman was looking for an argument, and

he went from behind the bar and said, "Herman, no look for trouble in my place; it is close to closing time and go home." He closed the saloon about five minutes of one. Herman and his brother went out first, then the four Lithuanians, and Lundgren, Nelson and Gerdack after them. Lundgren had a machine,—a small closed car,—standing in the street in front of the saloon, next to the curb. After they were all out of the saloon Haber locked the door from the outside, stood there for a few minutes with Lundgren and Nelson, then said good-night and went home. When he went away he left Lundgren, Gerdack and Nelson near a news stand which was in front of the saloon, standing by Lundgren's car and talking about it.

The Sprangers both testified that after Lundgren and Gerdack stopped playing pool they came to the lunch counter where the Spranger brothers were, and when Herman asked who won, Lundgren "got peeved because he lost," as Herman said, or as Theodore says, he "got sore and said something out of the way." Both testified that Nelson, who was there, took off his glasses, put them in his pocket and said he was going to clean out the place in five minutes. Nothing of the kind happened, however, or was attempted. The visitors departed without any hostile physical demonstration and the saloon was closed.

Lundgren, Nelson and Gerdack were left by Haber at the news stand at the northeast corner of the street intersection. Gerdack says they sat down on the news stand and no one else was around. When the Sprangers came out of the saloon they went over to the southwest corner of the street intersection and stopped there. Herman testified that he had noticed Lundgren had a star on, and when he came out of the saloon he went into a restaurant on the south side of North avenue, east of the Wood street intersection, called the Racine avenue police station, and told them that there was a man in the saloon who had a star and he would like to have the wagon down there.

When he came out of the restaurant he saw his brother on the southwest corner, so he told his brother that he had just called for the wagon and they would wait for it, and they did.

The evidence as to the fight which resulted in Lundgren's death is contradictory. There was a fight in which the Spranger brothers, Nelson and Lundgren were involved. It was not begun either by Lundgren or Herman Spranger. Nelson and Theodore were first involved, and there is a dispute in the evidence as to which was the aggressor. At the request of the State's attorney Nelson was called as a witness by the court. His narration of the events of the night was vague and his recollection apparently hazy and uncertain, both as to what took place in the saloon and the later events after the saloon was closed. The evidence shows that after the saloon was closed, and while the two parties, Lundgren, Nelson and Gerdack on the one hand and the two Sprangers on the other, were occupying opposite corners of the street intersection, Nelson twice or oftener walked around the four sides of the street intersection looking at the Sprangers, standing at the southwest corner, but not speaking to them or being addressed by them. His version of the occurrence is that he took a walk to the west side of the street and back, then over on the southwest corner and south on Wood street about the length of the building, having made two trips. When he was on Wood street, back about the length of the building, "a party came running over from the east side of the street and rushed me, grabbed me by the lapel of the coat and asked me if I was an officer, and I said 'no,' and it happened quick; and he made a swing at me and I ducked it and made a swing at him, and when I done that he let loose." He noticed two more men coming from across the street, and he ran north on Wood street in the direction to get over to Lundgren's car and was attacked, and he moved in another direction. Someone was on his back and car-

ried him to the middle of the street. He got the man off
his back and turned around to fight and saw four or five
men coming at him. He dodged them, and a passing auto-
mobile going west slowed down and he got on the running-
board. All he could hear then was people shouting, "Get
him! Get him!" He did not see what happened to Lund-
gren. When he returned to the place he saw some people
standing around the body of Lundgren.

Herman's version is, that when he came out of the
restaurant after telephoning to the police station Theodore
was standing on the southwest corner, and Herman told
him that he had called for the wagon and they would wait
for it. While they waited Nelson walked around the cor-
ners about four times and looked at them as he passed.
Herman started to go to the alley. Theodore said, "Come
on over and get in the car." Theodore started across the
street and Herman heard him call "Herman!" and ran
across the street and saw Nelson and Lundgren launch into
Theodore, beating him. Herman said, "Leave him go; it
is my brother." Both of them slapped Herman in the
face, and he struck once and Lundgren fell over on the
curb. Nelson then started to run west, and Gerdack, who
had stood at the news stand all the time, also went west on
North avenue. Herman and Theodore then left the place
and went home. He did not kick Lundgren.

Theodore testified that Nelson walked across the street,
while they were standing on the corner, four times and
looked at them and did not say a word and they never said
a word to him. Theodore started across the street to take
a car when two men jumped on his back and had him
down. He called for his brother to help him, and Herman
came across and said, "That is my brother; let him alone."
Nelson hit Theodore a couple of times, and the latter was
knocked down and lying right at the curb before Herman
came across the street, and Theodore saw him hit Lund-
gren with his hand. Lundgren fell down and hit the curb.

Theodore testified that Nelson struck him the first blow and he never hit Nelson at all.

Gerdack testified that he saw Spranger when the fight began, and Gerdack was the only one present; that somebody had a strangle hold on Nelson's neck but he could not see his face. Herman Spranger hit Lundgren and Lundgren fell down to the ground. Herman said, "I ain't afraid of nobody," and Gerdack ran home. Lundgren did not strike at Herman. Herman struck the first blow that was struck and Gerdack did not see any other person strike a blow.

A post-mortem examination revealed a fracture of Lundgren's skull, across the head from temple to temple, and death resulted in a few hours from violence, shock and hemorrhage. There were other circumstances in evidence in the case which we do not deem it necessary to state, though they were necessary to be considered by the jury in reaching their verdict.

There is evidence tending to corroborate each of the different accounts of the occurrence. Evidence was introduced of the previous good reputation as peaceable and law-abiding citizens of both the defendants. We do not intimate any opinion as to the weight of the evidence. It was contradictory and not of that clear and convincing character required to justify an affirmance of the judgment where serious error occurred on the trial. The defense claimed that Theodore Spranger was assaulted without justification by Nelson; that Herman Spranger went to his brother's rescue and was himself assaulted by Lundgren; that in protecting himself from this assault Herman struck Lundgren a blow with his fist, knocking Lundgren down, and that in falling Lundgren's head struck the curb, causing the fracture of the skull from which death resulted.

During the examination Herman Spranger was asked, "At the time you shot out your left hand did you intend to kill Ernest Lundgren?" He answered, "No, sir." The

court sustained an objection and struck the answer out. In criminal cases where the intention, the motive or belief of the accused is material to the issue he is allowed to testify directly to the fact. (*People* v. *Scott,* 284 Ill. 465; *People* v. *Peters,* 265 id. 122; *Wohlford* v. *People,* 148 id. 296.) The circumstances under which the act in question was done usually serve to manifest to a great degree the intent of the actor and may overcome his declaration as to his intention, but he has the right to testify to his intention and to have the circumstances surrounding the act considered in connection with his testimony. The answer made to this proposition is, that it is only in cases where the question of criminal intent is a close one on the facts that the accused may be asked directly as to his intent. The weight of the evidence of the prosecution does not affect the competency of evidence for the defense. It is not the rule in criminal trials that in clear cases competent evidence of the defendant may be rejected. In jury trials it is essential to a fair trial that the right of the parties to have all the competent evidence heard by the jurors and to have their verdict on all the evidence shall be observed. The error in rejecting a defendant's testimony as to his intent may not be sufficient to require a reversal of a judgment of conviction where no other conclusion than guilt can reasonably be reached, but that principle does not apply here. There was no evidence that any weapon, deadly or otherwise, was used. There was evidence that a single blow of the fist was struck, and while there was evidence that the deceased was kicked, it was for the jury to say whether that fact was proved beyond a reasonable doubt. If the jury found that the affair was a fist fight, only, and that the fracture of the skull was occasioned by a fall on the curbstone, the jury might reasonably conclude that the defendant's answer that he did not intend to kill Ernest Lundgren was true, and that even if the blow with the fist was not justified, the act was no more than manslaughter and was not murder. The

314—39

action of the court in excluding the answer prevented the jury from giving the defendant's denial of malicious intent any consideration and was erroneous.

A statement in the nature of a confession containing criminating admissions, signed by Theodore Spranger on September 24, 1923, in the police station after his arrest, was introduced in evidence in rebuttal. It was witnessed by officers Balata and Swenson and by Herman Spranger, who were all present when Theodore was questioned by Balata, who reduced the examination to writing. On objection being made to the statement, Balata testified as to the making of the statement. He testified that he asked the questions and Theodore answered and Balata reduced it to writing, and it was read to Theodore and Herman and signed by Theodore, and that Herman signed it as a witness. Balata stated: "I did not induce him by threats or violence, or any other way, to sign this statement. The statement was signed voluntarily. I did not beat him or in any way abuse him. This statement was taken on the 24th of September in the detective sergeants' room of the North Racine avenue police station, twenty-third district. There was present my partner, William M. Swenson, Theodore Spranger, Herman Spranger and myself. I asked him if he wanted to make a statement to me about the fight that he was in on the morning of September 23, about one o'clock in the morning. He said yes. There were no other remarks made by anybody. There were no other statements made by anyone there,—by any of the officers or defendants,—that was not incorporated in this statement or that I have not testified to. He then related the story in his own way and I took it down in my own handwriting. I might have omitted a word or two, your honor. I wouldn't say I got in every word. I did the best I could. Herman Spranger did not make any statement. His statement was taken the day prior to this statement. I was there at the time and affixed my signature."

Theodore testified with relation to the making of the statement: "I signed that on September 24, about noon. Officer Balata took me in a room there and I told him the truth. When I told him the truth he said, 'You are a liar.' I said, 'No, I ain't.' He was reading off the sheets and throwing them in the basket all the time. He said, 'Come on, now; if you can't tell me the truth I will give you a punch in the jaw,' and I told him the truth and he didn't put it down. Every time I told him he says, 'You are a liar.' I said, 'No, I ain't.' He said, 'Do you want some coffee?' I said, 'No, I don't care for any coffee.' He said, 'Give the boy some coffee,' and my brother was standing there and he wants the same statement what my brother said, and he asked my brother if that was right, and this and that, and they were asking him, and I sat down there, and there was a couple of officers, and my wife was to come in there, and they chased my wife out and my brother's wife. He signed it, and when he signed it he read it off. He put this and that down. I never heard that in my life what they put down there on that sheet there. Then they took me out of that room. They put me in a cell. They were asking my brother, Herman, before I signed it. They did not ask me much. I signed that document. I went to the eighth grade. I cannot read and write English. I went to the German school. They did not teach me to read and write. I didn't go to school much."

Officer Swenson, who was present during this examination, was not called to testify about it.

If Theodore's testimony was true this statement was not made by him freely and voluntarily but was procured by intimidation, by threats of violence, and the things put down were not what he said. If Balata's testimony is true the statement was freely and voluntarily made. It was held in *People* v. *Rogers,* 303 Ill. 578, that confessions forced by beating the maker of them into submission were properly

rejected by the court, and it was said there that the court was warranted in rejecting the confessions unless all the police department men engaged or present at the sweating of the maker of the confessions were called as witnesses and satisfied the court in good faith that the confessions had not been so obtained by them. In *People* v. *Sweeney,* 304 Ill. 502, that decision was followed, and it was said that the court in an investigation for the purpose of determining whether confessions are admissible in evidence has no right to disregard the testimony of the plaintiffs in error that the confessions were forced from them by the torture of deprivation of food and sleep, or by beating and physical violence, without even a denial of the facts to which they testified. Because of the failure to show that the statement was voluntarily made it should not have been received in evidence. It was not competent, in any event, against Herman, even if he did sign it as a witness. He had himself signed a statement the day before Theodore's was signed, which the court refused to admit because it had been obtained by the police by means of violence and threats, and the same influences were operative when he witnessed Theodore's statement.

The court permitted the jury to take Theodore's statement to the jury room with them upon their retirement to consider their verdict, overruling the defendants' objection. This was erroneous. It is error to permit the jury to take with them for consideration in the jury room depositions or dying declarations. (*Rawson* v. *Curtiss,* 19 Ill. 456; *Dunn* v. *People,* 172 id. 582.) The same rule applies to confessions or other instruments of evidence depending for their value on the credibility of the maker.

The court erred in instructing the jury. The defense in this case was the defense by Herman Spranger of his brother, Theodore, the principles of which are the same as those of self-defense. Instruction 13 was as follows:

13. "The court instructs the jury, as matter of law, that the words 'malice aforethought' do not necessarily imply the lapse of a considerable time between the malicious intent to take life and the actual execution of that intent; whether the design to effect death was formed on the instant or had been previously entertained is immaterial, for the malicious killing, if proven by the evidence beyond a reasonable doubt, in either case is murder under the laws of this State."

This instruction defines malice aforethought and in effect wholly eliminates the only defense in the case. Though malice aforethought does not necessarily imply the lapse of a considerable time between the malicious intent to take life and the execution of it and it is immaterial whether the design to effect death was formed on the instant or had been previously entertained, yet the deliberate intent to take life, and the deliberate act of actually doing so, may exist and neither the crime of murder nor any other crime be committed. A deliberate intent to kill is not necessarily evidence of malice aforethought. In self-defense deliberation and intention to take life may exist and the intention may be carried out without the violation of any law. The court so instructed the jury in this case when he told them that if Herman Spranger in good faith believed, upon apparently reasonable grounds, that Theodore was in danger of losing his life or receiving great bodily harm at the hands of Lundgren, and there appeared to Herman no other means of avoiding the danger, then Herman had a right to strike Lundgren in the defense of Theodore, and if the killing occurred under such circumstances the jury should acquit the defendants.

The fourteenth instruction is the same as that given in *People* v. *Casino,* 295 Ill. 204, which was held to nullify the plea of self-defense and to be fatally erroneous.

Instruction 15 is on circumstantial evidence, and says that it is the proof of such facts and circumstances "as

would tend to prove the guilt or innocence of the parties charged." It cautions the jury to exercise care in determining what facts and circumstances are proved, "and no facts or circumstances ought to be accepted, or treated, or considered as proven unless such fact or circumstance is proven beyond a reasonable doubt and to a moral certainty." The instruction is erroneous in requiring the facts "tending to prove the guilt or innocence" of the defendants to be proved beyond a reasonable doubt, as imposing a heavier burden on the defendants than the law requires. The facts tending to prove innocence need not be proved beyond a reasonable doubt. That degree of proof is required only of the People, never of the defendant.

Instruction 17 is as follows:

"No provocation by words only, however opprobrious, will mitigate an intentional killing so as to reduce the killing to manslaughter."

It is an abstract proposition which has no application to the case, and therefore should not have been given if otherwise proper. There was no evidence of any provocation by words.

Instruction 18 told the jury that the *corpus delicti* being proved independently of confession, the confession is sufficient to justify a verdict of guilty if the jury believe, beyond a reasonable doubt, it was not obtained by reason of threats or promises made by someone in authority. It was erroneous for the same reason as the similar instruction in *Michaels* v. *People,* 208 Ill. 603. The statement of Theodore Spranger was not a confession, which is an acknowledgment of participation in the crime and an admission of guilt, but was a mere statement containing admissions of some criminating circumstances. It is error to characterize such a statement as a confession.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*