THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* FÉLIX RAMOS CRUZ, Defendant and Appellant.

No. 17004. Decided March 5, 1962.

*Pablo R. Cancio* for appellant. *J. B. Fernández Badillo, Solicitor General of Puerto Rico,* and *Héctor R. Orlandi Gómez, Assistant Solicitor General,* for The People.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Dávila.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

Appellant strangled his concubine. He was charged with murder. The jury found him guilty and he was sentenced to life imprisonment.

On appeal he assigns as errors which entail the reversal of the sentence (1) having admitted in evidence a confession which, as a matter of law, was obtained involuntarily; (2) having denied a copy of the sworn statements given by several

witnesses for the prosecution whose testimony the district attorney waived and placed at the disposal of the defense; (3) having delivered to the jury a copy of the confession which had been admitted in evidence contrary to the provisions of § 274 of the Code of Criminal Procedure, 34 L.P.R.A. § 783; and (4) having instructed the jury on murder in both degrees when only instructions on homicide should have been given. Two other errors are assigned, which we shall set forth upon discussing them.

We shall now turn to relate the facts which resulted in this tragedy. Defendant and the victim Matilde Colón lived as man and wife in a ward of Río Piedras. On the day of the events, a Sunday afternoon, Matilde found defendant trying to enter the house of C... L... R... with whom defendant also had intimate relations. For this reason an argument arose between defendant and his concubine. Later in the night, at defendant's house, when Ramón Rosa, Matilde's sister and a girl friend, the defendant and the victim were drinking and dancing, the subject of the afternoon's incident when defendant tried to enter the house of his other lover, would come up at every moment. About eleven o'clock at night the gathering came to an end. The victim's sister and her friend slept in the same house where defendant lived, in a room next to the one where the events occurred. Before retiring Matilde again mentioned the afternoon's incident. Defendant told her to keep quiet, that they would end up "fighting." After a while a woman's scream was heard followed by a moan. Later, the light in the room where defendant slept was switched on. Instantly the one in the kitchen. Then defendant went out. He went to his other mistress. He wakes her up and both go to the house of a sister of defendant named Graciela. There he states that he has killed Matilde. From there he goes to Puerta de Tierra, to another sister's house and again states that he has killed his woman. He returns to Graciela's house. Before leaving for Puerta

de Tierra defendant has called his employer, and informs him to notify the police, because he is "in a jam." After making the call he meets another person and tells him that he has killed his woman. The police, having been notified goes to defendant's house and finds Matilde lying in bed, dead. She died by strangulation. The police goes to Graciela's house and defendant gives himself up to the police. He is taken to headquarters accompanied by his brother-in-law and another friend. They arrive at headquarters around three-thirty in the morning. Defendant requests protection lest the victim's relatives might attack him. It is about five o'clock in the morning when the district attorney questions him for about forty-five minutes or one hour, according to defendant's own statement. In his testimony before the jury defendant ratifies practically all of the facts we have related. He declares he revealed to several persons that he had killed Matilde and that he called his employer so that he would notify the police because he wanted to give himself up.

1. With these facts it is assigned as error that the written confession of defendant was obtained through psychological coercion. In support of his theory he alleges the limited intelligence of defendant, that before the district attorney arrived at headquarters, several policemen armed would walk into the place where defendant was detained and they asked him questions; that he was given nothing to eat nor did he sleep during the period prior to the confession. It should be remembered that according to defendant himself, he arrived at headquarters at three-thirty in the morning. He could not have arrived any earlier because the gathering at his house ended around eleven o'clock at night. Then the victim and defendant retired. After a while a scream was heard coming from the house. And then his pilgrimage began to López Sicardó Housing Project, then to Puerta de

Tierra, and back to the Housing Project, and then he surrendered to the police.

He went accompanied to headquarters and when the district attorney arrived alone he remained with defendant forty-five minutes. He repeated to the district attorney alone what he had already told to so many other persons. And on the day of the trial he repeated this again on the witness stand. Having arrived at headquarters at three-thirty in the morning, in the condition in which defendant evidently found himself, it was unlikely that he could either eat or sleep.

There is nothing in the evidence which in any way justifies, even remotely, a conclusion to the effect that defendant was coerced to confess. On the contrary, the evidence reveals that defendant was eager to communicate what he had done. Perhaps as a means of easing his conscience. The detention period was very short, and the whole evidence shows, we repeat, his desire to confess. Defendant himself takes the necessary steps to give himself up to the authorities. Certainly the fact that food was not offered him at four or five in the morning cannot be taken into consideration as a controlling factor that psychological coercion was employed to obtain a confession which defendant repeated and admitted to practically everyone he met. He arrived at headquarters, according to his own testimony, at three-thirty in the morning, and even supposing that the district attorney did arrive at seven, as defendant alleges and not at five o'clock as the district attorney stated, that period is not so long as to render void a confession which defendant had made on at least three previous occasions to three different persons. To decide whether or not the confession was obtained involuntarily we merely need to refer to *People* v. *Meléndez*, 80 P.R.R. 759 (1958) and we shall realize that all the elements analyzed to determine that the confession was obtained therein through psychological coercion are not even remotely present here.

■ 2. Neither do the statements of the presiding judge to the effect that it was immaterial whether or not defendant was given food during his detention at headquarters constitute error. Obviously it was so in view of the attendant circumstances.

3. Defendant assigns as error that upon reading his confession, the following, which appeared in said document, was also read:

"Q. Tell me if it is true that prior to these events you had given Matilde a beating?
A. Yes, sir.
Q. Prior to these events and during the time you have been living with Matilde, how many times have you beaten her?
A. Only once."

■ In support of his thesis defendant cites the cases of *People* v. *González*, 80 P.R.R. 203 (1958), and *People* v. *Archeval*, 74 P.R.R. 478 (1953). But these cases hold that it is inappropriate to introduce evidence of other previous offenses. The statements of defendant which the judge eliminated and instructed the jury not to consider refer to the commission of a public offense. But in any event when the jury received the document of the confession that part was stricken and was not legible. The judge sustained the objection presented by the defense and expressly instructed the jury not to consider that fact.

4. Defendant raises the question that he had a right to have the copies of the sworn statements given by the witnesses for the prosecution which the prosecution did not use and which it placed at the disposal of the defense. He invokes *People* v. *Ribas*, 83 P.R.R. 371 (1961).

■ The district attorney gave the defense copies of the sworn statements given by the witnesses for the prosecution who testified before the jury. But the defense was interested in the sworn statements of those who did not testify; and

in *Ribas* it was specifically held that defendant had a right to obtain a copy of the affidavit after the witness for the prosecution had testified.[1] The doctrine established in *Ribas* is based on the fact that defendant should have every opportunity to challenge the veracity of the witnesses who testify against him. It is for this reason that not until the witness has testified does the right to obtain the affidavit arise. That was what we decided in *Ribas* and what the Supreme Court of the United States decided in *Jencks* v. *United States*, 353 U.S. 657 (1957), and what other jurisdictions have held, *People* v. *Riser*, 305 P.2d 1 (Cal. 1956); *People* v. *Carella*, 12 Cal. Rptr. 446 (1961); *State* v. *Hunt*, 138 A.2d 1 (N.J. 1958) and *People* v. *Rosario*, 173 N.E.2d 881 (N.Y. 1961). In this case, although the defense conferred with the witnesses whom the district attorney waived, it did not call them to testify. Obviously, the circumstances prevailing here do not give defendant the right to obtain the requested statements. The situation is very different from the one which the Supreme Court of the United States considered in *Jencks* and we in *Ribas*.

■ 5. Let us consider the next error assigned. Having permitted the document containing defendant's confession to be delivered to the jury, contrary to the provisions of § 274 of the Code of Criminal Procedure, 34 L.P.R.A. § 783.[2]

When the question was raised by the defense, the trial judge dismissed it because he believed that a confession was

---

[1] In Rule No. 105 of the Rules of Evidence submitted to the Legislative Assembly in 1961 was established as a requisite for the delivery of evidence that "the requirement shall be made after the examination of the witness has ended."

[2] Said precept provides:

"Upon retiring for deliberation the jury may take with them, all papers (except depositions) which have been received as evidence in the cause, or copies of such public records or private documents given in evidence as ought not, in the opinion of the court, to be taken from the person having them in possession. They may also take with them the written instructions, if any are given."

not a deposition. On appeal, the Solicitor General maintains that in California, from where the provision invoked by appellant is derived, it has been interpreted that the same is not mandatory and that it vests the judge with discretion to determine which documents the jury may take to the deliberation room.

Provisions similar to ours are found in various state jurisdictions. California, 50 Cal. Code § 1137; Florida, 23 F.S.A. § 919.04; Idaho, 4 Idaho Code § 19-2203; Iowa, 57 Iowa Code Anno. § 784.1; Montana, 8 Revised Code of Montana, 94-7303; Nevada, 2 N.R.S. 175-390; North Dakota, 5 N.D. Cent. Code 29-2204; New Mexico, 4 N.M.S. 21-8-23 (1953 ed.) ; Ohio, Pagés Ohio Revised Code Ann. § 2945.35; Oregon, 1 O.R.S. § 17.320; Utah, 8 Utah Code Ann. § 77-32-2.

As we already stated, § 274 of the Code of Criminal Procedure was adopted from California. It has been interpreted in that state that what the jury may take with them in the matter of documents is left to the discretion of the court. *People* v. *Williams*, 9 Cal. Rptr. 722 (1960) ; *People* v. *Walker*, 310 P.2d 110 (Cal. 1957). And we agree that this is the reasonable interpretation of the section in relation to all documents which are not depositions.[3] But as to the depositions it clearly establishes a prohibition. *People* v. *Reyes*, 6 P.R.R. 195, 200 (1904).

 It has been held that a confession is a deposition. *State* v. *Crighton*, 34 P.2d 511 (Mont. 1934) ; *State* v. *Lord*, 84 P.2d 80 (N.M. 1938) and *People* v. *Spranger*, 145 N.E. 706 (Ill. 1924).

 What is the reason for this prohibition? It is held that it is unfair to defendant that the jury should have before

---

[3] Rule 140 of those of Criminal Procedure submitted to the Legislative Assembly on February 7, 1962 eliminates the concept of discretion by providing:

"Upon retiring for deliberation, the jury may take with them all papers or objects that have been received as evidence, except the depositions."

them a written document that they can read and reread as many times as they wish and in which the defendant admits the commission of the offense charged against him, while they only have a recollection of the oral testimony presented at the trial in his defense. And normally the written document which is read has more force than the oral testimony. It has been thus construed in a majority of jurisdictions where a provision similar to ours exists. *Walker* v. *State*, 109 S.E.2d 748 (Ga. 1959) ; *Royals* v. *State*, 65 S.E.2d 158 (Ga. 1951) ; *Strickland* v. *State*, 145 S.E. 879 (Ga. 1928) ; *Basham* v. *State*, 340 P.2d 461 (Okl. 1959) ; *Bonicelli* v. *State*, 339 P.2d 1063 (Okl. 1959) ; *State* v. *Solomon*, 87 P.2d 807 (Utah 1939) ; *cf. State* v. *Wilson*, 360 P.2d 1092 (Kan. 1961) and *People* v. *Spranger, supra.* The basis for the existence of the prohibition to the effect that the written confession of defendant should not go to the jury is both logical and reasonable. It should be the practice of our courts not to permit the written confession of defendant to go to the jury, after it has been read to the gentlemen of the jury when introduced in evidence by the district attorney. Such is the express provision of the code in force and as we pointed out in footnote 3, a similar provision appears in the new Rules of Criminal Procedure proposed by this Court. Since 1904 in *People* v. *Reyes, supra,* we stated at p. 200 "but in no case should the testimony or depositions of witnesses, as they are so denominated in the jury law previously cited, be delivered to them." (It refers to § 274 of the Code of Criminal Procedure.)

Now, the facts of this case having been considered, was it prejudicial to defendant to allow the confession to go to the jury? Irrespective of the fact that the trial judge should have made effective the provision invoked by defendant, his failure to do so did not have a prejudicial effect on appellant, given the very special circumstances surrounding this case. We understand that it did not prejudice

him, for although it is true that the jury had before them the written confession yet they also had a vivid recollection of the testimony of the different persons to whom defendant admitted the commission of the deeds. And defendant himself upon testifying affirms that this was so; that he communicated what had happened to several persons. Thus in this case, the written confession could hardly remind the jury more than the various testimonies introduced at the trial of persons to whom defendant confessed the facts, and add to this that in the written confession defendant states that the victim attacked him with a knife, an incident which is beneficial to defendant, since it inserted the element of a struggle and self-defense. So that the fact that the jury had before them the written confession which actually corroborated in part his testimony before the jury in his defense, far from being prejudicial to him, it might have conceivably benefited him. In view of these circumstances we shall not reverse the judgment appealed from though ordinarily, to allow the written confession to go to the jury, in violation of the provisions of § 274, would entail the reversal of the judgment and the granting of a new trial. In the future, we shall apply the rule thus.

6. The presiding judge gave the jury instructions on the crime of murder in both degrees and on voluntary manslaughter. Defendant assigns this as error because he maintains that it appears from the district attorney's evidence itself that the crime proved was at most voluntary manslaughter.

The evidence for the prosecution does not reveal any such thing. The sudden quarrel or heat of passion does not appear from this evidence. The preceding account of the facts shows this. It is the evidence for the defense which presents the elements constituting the crime of voluntary manslaughter. And for this reason the judge instructed the jury on this crime. But the jury did not give it credit and it re-

turned a verdict of murder in the first degree. The evidence for the prosecution, as we have seen, supports it. It was a death by strangulation. *People* v. *Túa, ante,* p. 37; *People* v. *Febres,* 78 P.R.R. 850 (1956) ; *People* v. *Blanco,* 77 P.R.R. 726 (1954) ; *People* v. *Torres,* 75 P.R.R. 219 (1953).; *People* v. *Méndez,* 74 P.R.R. 853 (1953). We have examined the instructions and the jury was adequately informed of the elements constituting the crime of murder.

None of the errors assigned was committed. The judgment appealed from will be affirmed.