The People of the State of Illinois, Plaintiff-Appellee, *v.* Melvin Patton, Defendant-Appellant.

(No. 73-277;

Fifth District—February 3, 1975.

Robert Farrell, of Mt. Vernon, and Steven Clark, of Chicago, both of State Appellate Defender's Office, for appellant.

Robert H. Rice, State's Attorney, of Belleville (Robert L. Craig, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

The defendant-appellant was indicted for the crimes of rape and aggravated kidnapping, and he was tried before a jury. After being found guilty of both charges, a sentence of from 20 to 60 years was imposed for rape. No sentence was imposed on the aggravated kidnapping charge.

On appeal the defendant contends that he was denied effective assistance of counsel, he was improperly convicted of two offenses arising from the same conduct, and his sentence was excessive.

The basis of defendant's claim concerning the competency of counsel is that counsel failed to offer an instruction to the jury on the defense of compulsion even though the defendant testified that he was forced by another person to aid in the commission of the crime. The alleged incompetence of appointed counsel will not require reversal unless the

attorney demonstrates "actual incompetence * * * as reflected by the manner of carrying out his duties as a trial attorney and * * * substantial prejudice results therefrom, without which the outcome would probably have been different." *People v. Gill*, 54 Ill.2d 357, 363-64.

A complete examination of the record is necessary to determine whether there was sufficient evidence supporting the defense of compulsion and whether the outcome would probably have been different if such an instruction had been offered.

The prosecutrix was 17 years old and a senior in high school. She testified that the following events took place when she left her home on January 29, 1973. About 8:30 P.M. she walked through her yard and onto a parking lot near a shopping center which was her destination. A car stopped in the parking lot, and one person got out of the car, put a gun to her head and said, "Get in the car and don't scream or I'll shoot you." She and the man with the gun got into the back seat, and a second individual drove the car. Her head was forced onto the floor, and several minutes later she was struck on the head with the gun. The gunman instructed the driver as to directions. After about 15 or 20 minutes the car was stopped, and one of the individuals found a rag that was applied to her head to stop the bleeding. A few minutes later both men raped her in the car with the driver of the car, who was called Melvin by the gunman, being the first to perform the act. Although her face was concealed part of the time, she was able to see somewhat and also able to distinguish one of the men from the other. After driving a short distance, the individual called Melvin pushed her out of the car and he then got out and told her that there was a police station down the street. He then ran off. She went to a nearby house for help and was then taken to her own home. Later she was taken to a hospital by her family. She viewed a police line-up about 2 weeks later at which time she identified defendant as one of the men who raped her.

On cross-examination, the prosecutrix stated that the defendant never had a weapon; that he found the rag for her head to stop the bleeding; that she saw the defendant when he reentered the car and the dome light went on; that she was certain that both men had intercourse with her; that after the rape, it was defendant who got out of the car and guided her in the direction of the police station.

The only other witness to testify for the prosecution was Kenneth McCoy, an East St. Louis police officer. He identified People's Exhibit No. 1 as a statement by the defendant made 2 weeks after the incident to McCoy and Sergeant Morrison of the East St. Louis Police Department. The statement was then read in open court, and it confirmed the prosecutrix's testimony with the exception that the defendant denied having

intercourse with the prosecutrix. The defendant also told McCoy that his companion raped the prosecutrix in the back seat while the car was moving.

The testimony of McCoy indicated that defendant never told· him that he may have been under duress or coercion during the evening in question. McCoy also identified defendant's Exhibit No. 1 as a police report which included a statement made to the police by the prosecutrix. The report stated that the prosecutrix was raped by a man with a gun.

The defendant was the only witness to testify during his case-in-chief. He stated that he was 17 years old and on the evening in question was riding with his companion in his car. He claimed that he objected to his companion's suggestion that they rape the prosecutrix. His version of the incident was substantially the same facts as included in People's Exhibit No. 1, the statement made by the defendant to the police. The defendant denied having sexual intercourse with the prosecutrix, and he also stated that his companion was pointing the gun at him when he, the companion, raped the prosecutrix.

As a rebuttal witness, McCoy testified that the defendant never indicated to him that he, the defendant, was forced against his will to do anything on the night in question. Bruce Morrison, a sergeant with the East St. Louis Police Department, testified on rebuttal that he was present when the defendant made his statement to McCoy and that defendant never stated he was forced unwillingly to participate in the incident in question. There is no question that an instruction regarding a defense should be given when requested even where there is only "very slight evidence" supporting the defendant's theory. (*People v. Kucala*, 7 Ill. App.3d 1029; *People v. Keating*, 2 Ill.App.3d 884.) In light of defendant's testimony, a compulsion instruction should have been given if one had been tendered.

■■ The defense of the defendant was based on compulsion, as indicated by defense counsel's opening and closing statements, and the fact that defendant admitted that he aided his companion in the perpetration of the offense. Counsel's failure to tender an instruction was inexcusable. However, an examination of the record reveals that counsel's failure to offer a compulsion instruction did not constitute incompetence. Defense counsel prior to trial filed three motions to suppress, and five witnesses were examined on these motions. The cross-examination of the prosecutrix had to be a delicate task under the circumstances, and defense counsel accomplished it with more than average skill. A study of the record and the transcript of proceedings demonstrates to this court that defense counsel was well prepared and provided the defendant with very competent representation.

Counsel's failure to tender an instruction on the defense of compulsion did not result in prejudice "without which the outcome would probably have been different." The jury was instructed on the theory of accountability as follows:

"A person is responsible for the conduct of another person when, either before or during the commission of a crime *and with the intent to promote or facilitate the commission of a crime,* he knowingly solicits, aids, abets, agrees or attempts to aid the other person in the planning or commission of the crime." (Emphasis added.)

If the jury believed that the defendant did not rape the prosecutrix but found that the defendant was accountable for the actions of his companion, the jury must have found that the defendant had "the intent to promote or facilitate the commission of a crime." If the jury believed the defendant had such an intent, it does not seem plausible that they would have found in favor of the defendant as to the defense of compulsion had the proper instruction been given.

The two East St. Louis police officers testified that the defendant never indicated to them that he, the defendant, may have been under duress or coercion during the evening in question. The defendant on the witness stand did not testify that he actually feared death or serious bodily harm if he did not follow the instructions of his companion. The defense of compulsion is not applicable in a situation in which there was no apprehension of death or serious bodily harm (*People v. Ricker,* 45 Ill. 2d 562; *People ex rel. Rusch v. Rivlin,* 277 Ill.App. 183). The defendant did testify that his companion pointed a gun at him on two occasions. However, defendant did not testify that he was afraid, and given the fact that the defendant and his companion were friends, it was not likely that the jury would have found in favor of the defendant had they been instructed as to the defense of compulsion.

 In *People v. Morris,* 3 Ill.2d 437, 449, 121 N.E.2d 810, discussing deprivation of due process of law because of alleged incompetence of appointed trial counsel the court observed:

"* * * based both on precedent and reason, we believe that in order to sustain his position here the defendant must clearly establish: (1) actual incompetency of counsel, as reflected by the manner of carrying out his duties as a trial attorney; and (2) substantial prejudice resulting therefrom, without which the outcome would probably have been different. Due to the nature of the inquiry it is hardly possible to be more definite, and each case will have to be judged on its own particular facts as they appear in the context of the proceedings under consideration."

Consequently, we find that counsel's failure to tender an instruction on the defense of compulsion did not create prejudice "without which the outcome would probably have been different."

The second point in defendant's appeal is that he was improperly convicted of two offenses arising from the same conduct. Even though the jury found him guilty of both offenses, the defendant was sentenced only for the offense of rape. He thus alleges that the aggravated kidnapping conviction should be reversed in that it arose from the same conduct that supported the rape conviction.

■■ The same situation arose in *People v. Jones*, 6 Ill.App.3d 669. The court held in that case that the offenses of aggravated kidnapping and rape are separate and distinct crimes and require different elements of proof. That the kidnapping would be aggravated due to the commission of the rape would not render them the same for prosecution. Our supreme court in *People v. Johnson*, 44 Ill.2d 463, laid down some clear guidelines for decisions when defendants claim that one conviction should be reversed because it arose from the same conduct that supported another conviction. It said:

> "However proper the application of the above statutory provisions may be in cases which would involve double punishment for the same conduct where the same identical evidence is the basis for the finding of guilty of both charges, we believe they were not intended to cover situations in which more than one offense arises from a series of closely related acts and the crimes are clearly distinct and require different elements of proof." (44 Ill.2d 463, 475.)

In that case, the court found that crimes of rape and burglary were separate and distinct crimes requiring different proof to sustain them. While we recognize that the acts of the defendant were not wholly unrelated, nevertheless, the two offenses involved two different mental states. The conduct constituting the offense of kidnapping was the abduction of the victim against her will, and then in a remote area 15 or 20 minutes later, the prosecutrix was raped by the defendant; thus defendant's claim that he was improperly convicted of two offenses arising from the same conduct is without merit.

■■ In the instant case, the jury returned a general verdict of guilty, and the defendant was not sentenced on each count. As stated in *People v. Lymore*, 25 Ill.2d 305, 308:

> "This court has also held that in a case where an indictment contains several counts arising out of a single transaction, and a general verdict is returned, the effect is that the defendant is guilty

as charged in each count, and if the punishment imposed is one which is authorized to be inflicted for the offense charged in any one or more of the counts, the verdict must be sustained."

Accordingly, the two convictions against the defendant are upheld. However, the mittimus issued by the trial court indicates that the defendant was sentenced for both offenses, while the trial court specifically stated that a sentence was not being imposed for the offense of aggravated kidnapping. Thus the mittimus is amended wherein the words "and aggravated kidnapping" is stricken.

■■ The defendant's final contention is that the sentence of 20 to 60 years is excessive. He cites the 1970 Illinois Constitution as follows:

"All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." (Ill. Const. (1970), art. I, § 11.)

We agree with this contention; the defendant was 17 years old at the time of the offense, and he had no record of a prior conviction. As a juvenile, he escaped from The Giant City Youth Development Center in 1972. No evidence was presented at the sentencing hearing.

Considering the testimony at the trial and the gravity of the crime, the trial court was justified in imposing a minimum sentence in excess of 4 years. However, it is unrealistic to believe that a youth may successfully participate in a worthwhile program of rehabilitation in the Department of Correction with a sentence of 20 to 60 years to look forward to. The language in *People v. Jones*, 6 Ill.App.3d 669 is applicable. The court in *Jones* stated at page 687:

"* * * does not indicate that the best interests of society or of the defendants would be served by foreclosing them from the possibility of rehabilitation by being considered for parole before serving 20 years, less time for good behavior. The parole authorities should be given an opportunity to consider their possibilities of rehabilitation at a time when rehabilitation is still possible and at a time and age when it may be possible for them to 'make it' outside the walls of an institution."

Therefore, we affirm the judgment of conviction, modify the sentence, and remand this cause for issuance of an amended mittimus to show that the defendant was sentenced only for the crime of rape, and a reduction of the minimum to 10 years and the maximum of 30 years.

The judgment of the Circuit Court of St. Clair County is affirmed as modified; the cause remanded with directions.

EBERSPACHER and CREBS, JJ., concur.