·  THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* OSCAR LEE JONES, Defendant-Appellant.

Fourth District   No. 14964

Opinion filed November 3, 1978.

Richard J. Wilson and David Bergschneider, both of State Appellate Defender's Office, of Springfield, for appellant.

Patrick M. Walsh, State's Attorney, of Decatur (William L. Wheeler, Assistant State's Attorney, and David B. Fox, law student, of counsel), for the People.

Mr. PRESIDING JUSTICE GREEN delivered the opinion of the court:
After trial by jury in the circuit court of Macon County, defendant Oscar Lee Jones, then 18 years old, was convicted of the offenses of burglary, robbery and rape. Concurrent sentences of 6 2/3 to 20 years, 6 2/3 to 20 years, and 100 to 300 years were imposed on the respective convictions and ordered to be served consecutively with a sentence of 20 to 60 years previously imposed on another unrelated charge. On appeal, defendant asserts that: (1) the trial court erred in sending his written confession to the jury room; (2) he was denied a fair trial because some jurors serving in the case had seen a newspaper article telling of his prior criminal conduct; (3) the trial court considered improper matter in sentencing; and (4) the sentences were excessive.

■■ In *People v. Caldwell* (1968), 39 Ill. 2d 346, 236 N.E.2d 706, the supreme court held that a trial court may in its discretion send a written or tape recorded confession of a defendant to the jury room, overruling any possible precedent to the contrary in *People v. Spranger* (1924), 314 Ill. 602, 145 N.E. 706. Defendant argues that the court's discretion was breached here because the evidence corroborating the confession was meager and the identification of the defendant by the 88-year-old victim was weak and subject to impeachment by her identification at a lineup of another as the assailant. Defendant relies on the pre-*Caldwell* decision in *People v. Dixon* (1966), 75 Ill. App. 2d 77, 221 N.E.2d 35, *aff'd* (1967), 37 Ill. 2d 416, 226 N.E.2d 608, where the defendant's confession had been

sent to the jury room and the appellate court's affirmance relied upon the strength of the corroborating evidence. The *Caldwell* court, however, specifically rejected the rationale of *Dixon* and other cases which had distinguished *Spranger* on similar grounds and relied upon the strong probative value of a voluntary confession. The *Caldwell* opinion noted that greater safeguards are now afforded a defendant against the admission of involuntary confessions by the imposition of the requirements of *Escobedo v. Illinois* (1964), 378 U.S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758, and *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. No question of the voluntariness of the confession was raised on appeal here. No error arose from the sending of the confession to the jury.

Defendant's contention that he was denied a fair trial arises from some of the jurors' contact with a story appearing in the Decatur Herald on the second morning of the trial. Before the presentation of any evidence that morning, defense counsel presented the court with a copy of the article. It stated:

"JONES BEING TRIED ON SECOND RAPE CHARGE

A Decatur youth already sentenced to 20 to 60 years for the rape of one elderly Decatur woman is on trial for raping and robbing another.

He is Oscar Lee Jones, 17, of 445 E. Center St., sentenced in January for an assault on an 87-year-old woman last July 18.

The current trial involves the rape and robbery of another 87-year-old woman last June 7.

Still pending against Jones are charges that he attempted to rape a 65-year-old woman last April 30.

The current trial, with Judge Joseph Munch, of Sullivan presiding here, is expected to go to the jury today.

All of the attacks attributed to Jones took place at homes on the northeast side of the city."

Each juror was then brought before the court individually, out of the presence of the other jurors, and questioned concerning whether he or she had seen the article. Eight had seen nothing of the article. One stated to having only seen the name "Jones" and to having looked no further. Another had seen only the headline. A third had seen the headline and the first paragraph and a fourth had read the article. Although all four stated that they would put what they had read out of their minds and decide the case on information properly before them, the response of the juror who read the article was somewhat ambiguous. His questioning went as follows:

"The Court: Did you read this morning's Decatur Herald?
Juror: Yes.
The Court: Will you have any difficulty putting any information

as to this case out of your mind and listening strictly to the evidence in the instructions of the court in deciding the verdict?

Juror: Yes, sir.

Mr. Parkinson [Prosecutor]: Would you have any difficulty putting this out of your mind?

Juror: No.

Mr. Parkinson: You will decide the case on what you have heard from the witness stand?

Juror: Just what I hear in court.

Mr. Baxter [Defendant's counsel]: Would what you read influence you in any way?

Juror: No."

A defense motion for a mistrial, which was made during the questioning of the jurors and stood throughout the balance of the interrogation, was denied by the court. We agree with that court's determination, inherent in its ruling, that the juror who had read the article misunderstood the court's question to him as to his ability to disregard the article. The juror's answer to that question was clarified by his response to the prosecutor's question. We are satisfied that he intended to answer that he could disregard the article. However, whether he or the other jurors who had contact with the story would actually put it out of their minds is a more difficult question. The article as a whole and even its headline alone contained information highly prejudicial to the defendant and not proper for the jury's consideration.

In *People v. Malmenato* (1958), 14 Ill. 2d 52, 63, 150 N.E.2d 806, 812, the court stated that a motion for a mistrial because of jurors' improper contact with media reports prejudicial to a defendant in a criminal case "is addressed to the sound discretion of the trial court" but that an abuse of that discretion will require reversal. There, the news article which had been read by one juror stated that the defendant charged with attempt burglary had 43 arrests but no convictions. As here, the jury swore that it could disregard the article. The conviction was affirmed. On the other hand, in *People v. Keegan* (1971), 52 Ill. 2d 147, 286 N.E.2d 345, a new trial was awarded although the two jurors who had read the news article in question swore that they would not be influenced. That defendant was charged with taking indecent liberties with a child. The article stated that color slides of nude children had been seized from the defendant's apartment but suppressed prior to trial and also stated that the defendant had four similar complaints pending. The court noted that the defendant had denied the act and had many character witnesses testifying on his behalf.

The cases draw a fine line. Both *Malmenato* and *Keegan* agree with the statement in *People v. Hryciuk* (1954), 5 Ill. 2d 176, 125 N.E.2d 61, that a

statement by a contaminated juror that he will not consider the prejudicial information is not conclusive. *Hryciuk* spoke of the nature of the prejudicial statement as being the most important consideration in ruling on this type of motion for a mistrial. *Malmenato* noted that in prior cases reversing convictions the prejudicial information was attributed to having come from the prosecutor's office.

The case before us is more like *Malmenato* than *Keegan.* The prejudicial information concerned only other offenses rather than including reference to evidence suppressed in the case on trial. In *Keegan* the defendant had testified denying the acts. Here, no such evidence was introduced and the uncontradicted evidence was that defendant had admitted the offense. None of the information was purported to have been given by the prosecutor. We rule that the trial court's denial of the motion for a mistrial was not an abuse of discretion.

At sentencing the court heard testimony that defendant had committed acts of criminal damage to property and sodomy while he was in jail. Relying upon our decisions in *People v. Taylor* (1973), 13 Ill. App. 3d 974, 301 N.E.2d 319, and *People v. Guthrie* (1978), 60 Ill. App. 3d 293, 376 N.E.2d 425, he maintains that consideration of this material was error. He misunderstands the reasons for our rulings in those cases. The evil there was not the consideration of firsthand evidence of the commission of misconduct that amounted to crime but the consideration of mere arrests for or charges of alleged criminal conduct. In *People v. Stoutenborough* (1978), 64 Ill. App. 3d 489, 381 N.E.2d 415, we ruled that in sentencing a person convicted of taking indecent liberties with minors, the court properly heard evidence that the defendant had committed other acts with the same minors for which he had not been charged or convicted. Similar rulings were made in *People v. Barksdale* (1976), 44 Ill. App. 3d 770, 358 N.E.2d 1150, and *People v. Davis* (1976), 38 Ill. App. 3d 649, 348 N.E.2d 533. The information in question here was properly considered as bearing upon the defendant's general moral character, abnormal tendencies and natural inclination or aversion to crime. See *People v. Adkins* (1968), 41 Ill. 2d 297, 242 N.E.2d 258.

Finally defendant argues that imposition of the 100- to 300-year sentence running consecutively to the prior 20- to 60-year sentence is excessive. By the combined operation of sections 5—8—4(e) and 3—3—3(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, pars. 1005—8—4(e) and 1003—3—3(a)) defendant will be eligible for parole after serving 20 years less time for good behavior. The only purpose served in imposing minimum sentences in excess of 20 years is for the trial court to indicate its belief that the defendant should not be soon paroled. Whether the aggregate of the minimum sentences in this case had been 40 years or 4,000 years that message would have been given. By the same

token maximum sentences imposing terms well in excess of the expected life of the defendant have only a similar purpose. The net effect of the sentence imposed here was to make the defendant eligible for parole in 20 years less time for good behavior and to impose a maximum sentence that he could not possibly complete during his lifetime. Even if the minimum and maximum terms of the sentences were reduced to one-fourth of their stated length, the practical effect of the sentence would not be changed.

■ This case differs from *People v. Patton* (1975), 25 Ill. App. 3d 840, 322 N.E.2d 592, where a 20- to 60-year sentence for rape and aggravated kidnapping was deemed excessive when given to a 17-year-old boy. There the defendant had no prior felony convictions and evidence in aggravation was not as damaging as here. The trial judge here did not err in rendering sentence of the effective severity imposed here.

We affirm.

MILLS and TRAPP, JJ., concur.